## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**BRAD YOUNG, et al.,**

        **Plaintiffs,**

        **v.**

**MESA UNDERWRITERS
SPECIALTY INSURANCE
COMPANY,**

        **Defendant.**

        **Case No. 2:19-cv-3820
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Kimberly A. Jolson**

### <u>OPINION AND ORDER</u>

This matter is before the Court on Defendant Mesa Underwriters Specialty Insurance Company's, ("Defendant" or "Mesa") Motion for Judgement on the Pleadings. (ECF No. 12). Plaintiffs, Mr. Brad Young and Mrs. Jamie Young, ("Plaintiffs") responded in opposition. (ECF No. 16). Defendant replied. (ECF No. 19). Thus, the motion is ripe for review. For the following reasons, Defendant's Motion for Judgment on the Pleadings (ECF No. 12) is **DENIED**.

### I.

On the morning of September 1, 2013, Mr. Young was taking a bike ride along Dublin Road, when, shortly before 8:00AM, he was struck by a vehicle. (Compl. at ‖‖ 11–12, ECF No. 1). Mr. Young survived, but not without suffering severe and permanent injuries. (*Id.* at ‖ 13). The vehicle that struck Mr. Young was driven by Randall Pennington. (*Id.* at ‖ 12). Mr. Pennington had been driving home from his shift at the Columbus Gold bar, which is operated by 5411, Inc. (*Id.* at ‖ 10).

At the time of the accident, 5411 was insured by Mesa under a Commercial General Liability Policy (the "Policy") (Policy No. MP0034001000643, ECF No. 1-1). This Policy

includes liability coverage for "bodily injury" cause by an "occurrence[,]" and defines the latter to mean an accident. (ECF No. 1-1 at PageID #39, 52). The Policy includes a Liquor Liability exclusion, as well as an Employment-Related Practices exclusion. (*Id.* at PageID #40, 57).

On November 10, 2014, Plaintiffs filed suit against 5411 in the Franklin County Court of Common Pleas. (Counterclaim ⁋ 15, ECF No. 7; Pl. Answer ⁋ 9, ECF No. 8). The State Court Complaint, as later amended on October 14, 2015, included claims against 5411 for negligent supervision and training, negligence per se, negligence, violation of O.R.C. § 4399.18 (Ohio's dram shop statute), and loss of consortium. (Def. Ex. 3 at 4–8, ECF No. 7-3; Pl. Answer at ⁋ 12, ECF No. 8).

At some point 5411 provided notice of Plaintiff's claims to Mesa. (Compl. at ⁋ 17). The pleadings reveal that Mesa received a copy of the first amended complaint, (Counterclaim at ⁋ 18, ECF No. 7; Pl. Answer at ⁋ 12, ECF No. 8), but the Plaintiffs do not allege knowledge of anything further. On October 3, 2016, Mesa issued 5411 a letter declining coverage. (Compl. at ⁋ 17; ECF No. 1-2). Mesa thus did not participate in the litigation. (Compl. at ⁋ 18).

The state court case proceeded to a bench trial on January 17, 2019. (*Id.* at ⁋ 19). At the beginning of trial, before opening statements were delivered, Plaintiffs withdrew Counts 2 and 4 (negligence per se and violation of Ohio's dram shop statute) and advised the State Court that there was no evidence that Mr. Pennington was intoxicated. (Counterclaim at ⁋⁋ 34–35, ECF No. 7; Pl. Answer at ⁋ 22, ECF No. 8). Defendant alleges that neither Plaintiffs nor 5411 provided Defendant with notice of the trial, or any intent to withdraw Counts 2 and 4, and recant the allegations of intoxication. (Counterclaim at ⁋⁋ 32–37, ECF No. 7). Plaintiffs admit that they did not provide Defendant with any such notice but deny for want of knowledge that 5411 failed to provide Defendant with notice. (Pl. Answer at ⁋⁋ 20–24, ECF No. 8).

On February 13, 2019, the State Court issued the following Findings of Fact and

Conclusions of Law and Final Judgement:

> This matter came before the Court on January 17, 2019 for a bench trial. Plaintiffs, Brad and Jamie Young, seek damages against Defendant, 5411, Inc., for injuries stemming from a car-on-bike collision on September 1, 2013. The Court makes the following findings of fact, conclusions of law, and final judgment.

### FINDINGS OF FACT

1. Plaintiff, Brad Young, is an individual and resident of Franklin County, Ohio.

2. Plaintiff, Jamie Young is an individual and resident of Franklin County, Ohio.

3. Defendant, 5411, Inc. is an Ohio corporation. At all time relevant to this case, 5411, Inc. operated an adult entertainment bar called Columbus Cold.

4. Columbus Gold was located near the corner of Bethel and Sawmill Roads in Columbus. (Pennington Dep., 10:16–21.)[1]

5. At all times relevant to this lawsuit, non-party Randall Pennington was an employee of 5411, Inc. Mr. Pennington worked at Columbus Gold for over fifteen years, from June of 1999 to September of 2014. (Pennington Dep., 7:21–25.) Mr. Pennington's role including serving as a Floorman, door guy, [and] featured entertainer security." (*Id.* at 11:1–4.)

6. The hours of a typical shift for Mr. Pennington in 2013 were 9:00 PM to close. (Pennington Dep. 12:2–6.)

7. Columbus Gold did not have an employee handbook. (Pennington Dep. 20:24–21:9.) Nor did Mr. Pennington ever receive any employee policies, including any policies about employees drinking at the bar after it closed to the public. (*Id.* at 22:14–23:2; 24:6–10.) Employees did at times consume alcohol in the bar after closing and Mr. Pennington never observed any discipline for that conduct. (*Id.* at 25:10–24.)

8. Mr. Pennington was working at Columbus Gold the night of August 31 into September 1, 2013. (Pennington Dep., 27:18–24.) At this point, Mr. Pennington's responsibilities were more directed at security for the featured performers at the bar, many of whom came from out of town. This involved picking up dancers from the airport, from their hotels, protecting them while they were working, and taking them back home. (*Id.* at 11:10–12:1.)

---

[1] "The parties have stipulated to the admissibility of the deposition testimony of Mr. Pennington taken on June 2, 2015. Accordingly, the Court admits [] the portions of Mr. Pennington's deposition testimony read into the record under Civ.R. 32." (ECF No. 1-3).

9. That night, Mr. Pennington recalls picking up the featured dancer, bringing her to the club, and working security for her. (*Id.* at 27:25–28:8.)

10. Mr. Pennington stayed at the bar after the show ended that night. Once the patrons were out of the bar (after midnight), Mr. Pennington helped clean up and worked on the featured dancer's paperwork so she could get paid. (*Id.* at 29:8–19; 30:7–22.)

11. That night, Mr. Pennington drank Jagermeister mixed with Red Bull, known as a "Jagerbomb," both while the bar was open to the public and after it closed at 2:30 AM. Mr. Pennington did not recall how many he consumed. (*Id.* at 31:16–33:2.) There were other employees present in the bar having drinks after 2:30 AM. (*Id.* at 33:6–8.) It was not unusual for employees to stick around the bar and have drinks after the public left at 2:30. (*Id.* at 35:16–21.) Mr. Pennington is sure that there was a manager among the employees who were drinking after 2:30 AM. (54:11–16.)

12. Cautious not to drive after having had a few drinks, rather than leave after he had finished all of his work tasks, Mr. Pennington went to sleep on the couch in one of the champagne rooms. He slept for about three-and-one-half hours and woke up shortly before 8:00AM on September 1. (*Id.* at 41:1–23.) Mr. Pennington grabbed a Red Bull and left in his car. (*Id.* at 43:2–14.)

13. Mr. Pennington drove down Hayden Run Road and turned left onto Dublin Road. Plaintiff Brad Young was riding his bicycle southbound on Dublin Road. Mr. Pennington hit Mr. Young with his car after turning left onto Dublin Road. (*Id.* at 44:2–45:13.) Mr. Pennington panicked it did not stop (sic), and instead drove home. (*Id.* at 46:5–18.) Mr. Pennington is not aware of anything Brad Young did that made Mr. Young responsible for the crash. (*Id.* at 51:21–52:3.)

14. Brad Young suffered severe injuries from the crash. He was thrown from his bicycle and medical records reflect that he suffered a prolonged loss of consciousness. (Plaintiff's Ex. 5, 9/1/13 History and Physical.) Mr. Young suffered numerous injuries including a traumatic brain injury, bleeding on his brain, deep lacerations on his body, broken ribs, and a separated shoulder. He was in a critical care unit at Riverside Hospital for several days, and then transferred to an inpatient rehabilitation hospital where he went through intensive rehab for nearly two months. He required substantial and long-lasting treatment for his injuries and missed significant work.

15. Testimony by the Youngs establishes that Mr. Young has suffered memory loss, lack of focus, an inability to think clearly, and motor problems with his extremities, all as a result of the crash. These problems continue today. Mr. Young also has permanent, substantial scarring as a result of the crash.

16. Evidence submitted at trial establishes that Mr. Young has incurred $127,431.33 in medical bills for reasonably necessary because of the crash and resulting injuries.

17. Evidence submitted at trial establishes that Mr. Young has incurred lost wages of $19,322.24 because of the crash and resulting injuries. Mr. Young's salary during the relevant time period was $43.13 per hour. Mr. Young was completely off of work for forty-two full 8-hour days, 13 half-days (missing 4 hours each) and 30 quarter-days (missing 2 hours each).

18. Evidence submitted at trial establishes that Jamie Young has suffered significant emotional harm, loss of society, and loss of services as a result of the crash and Mr. Young's injuries.

## CONCLUSIONS OF LAW

1. In their first amended complaint, plaintiffs assert claims for negligent supervision and training (Count One), negligence per se (Count Two), negligence (Count Three), dram shop liability under R.C. § 4399.18 (Count Four); and loss of consortium for Jamie Young (Count Five). Defendants have denied liability for all counts. Plaintiffs have withdrawn their claims under Counts Two and Four.

2. The Court finds that the evidence does not establish that Mr. Pennington was ever intoxicated on the night or morning in question, and that plaintiffs are not entitled to any relief for alleged violations of any statutes or regulations.

3. The Court finds in favor of the plaintiffs on Counts One and Three. The Court finds that 5411, Inc. owed a duty of care to ensure that its employees conducted themselves in a safe manner so as not to harm the public after their shift responsibilities ended and they left the bar and to train and supervise its employees to this effect. 5411, Inc. breached this duty because it did not ensure that its employees conducted themselves in a safe manner and did not adequately train or supervise its employees as to their after-hours conduct, and did not have adequate policies in place to ensure that employees completed their closing duties promptly and left the bar at a reasonable time and in a safe manner. The Court finds that it was reasonably foreseeable that the failure to take these precautions would lead to harm to members of the public, including those using public roadways such as Brad Young. The Court thus finds that the breaches of duty by 5411, Inc. were the direct and proximate cause of harm to Brad Young.

4. The Court finds in favor of Jamie Young on her derivative loss of consortium claim, Count Five, for the same reasons it finds in favor of Brad Young on Counts One and Three.

5. The Court is mindful of the language of R.C. § 4399.18 and the Ohio Supreme Court's decision in *Johnson v. Montgomery*, 2017-Ohio-7445, 151 Ohio St.3d 75. However, the Court finds that neither the dram shop statute's exclusive remedy

provision nor the outcome of *Johnson v. Montgomery* apply here because Counts One and Three of plaintiffs' first amended complaint do not depend on a finding that Mr. Pennington was intoxicated. Indeed, there is no evidence in the record that allows a finding that Mr. Pennington was actually intoxicated at any point on the night or morning of August 31 to September 1.

6. This Court's finding in plaintiffs' favor on Counts One, Three, and Five is not premised on a) the causing or contributing to the intoxication of Mr. Pennington, b) the furnishing of alcoholic beverages to a person under the influence of alcohol, or c) the violation of any statute, ordinance, or regulation relating to the sale, gift, distribution, or use of alcoholic beverages. In addition, the Court does not base its findings in plaintiffs' favor on a *respondeat superior* theory, as Mr. Pennington was not acting within the scope of his employment by 5411, Inc. or performing duties related to the conduct of 5411, Inc.'s business when he was driving his vehicle home after staying at work too late. Rather, plaintiffs assert common law negligence claims against 5411, Inc. directly and the Court finds in their favor under these common law theories.

7. The Court's finding in plaintiff's favor is based on common law negligence principles—including a common law duty of reasonable care to avoid foreseeable harm to others—which are subsumed within the elements of claims for negligence and negligent supervision. Plaintiffs' common law negligence claims are sufficiently distinct, separate, and independent from a claim based on a) on the causing or contributing to the intoxication of Mr. Pennington, b) on the furnishing of alcoholic beverages to a person under the influence of alcohol, or c) on the violation of any statute, ordinance, or regulation relating to the sale, gift, distribution, or use of alcoholic beverages. Plaintiffs' common law claims are based on the case specific facts and attendant circumstances involved here. And these claims relate to 5411, Inc.'s negligence in failing to ensure its employees promptly perform their closing duties and promptly leave the bar after closing time rather than lingering and hanging out to the point that they pose a danger to the public on the road when finally driving home, even if unintoxicated, as well 5411, Inc.'s negligent failure to train and supervise employees regarding the same.

8. When, as here, the case-specific facts and attendant circumstances show independent acts or omissions of negligence that are separate, distinct and independent from the service of alcohol to intoxicated persons, Ohio Courts have permitted common law negligence actions to be maintained against the establishment. *See Mid-Continent Ins. Co. v. Coder*, 563 Fed. Appx. 422 (6th Cir. 2014); *Prince v. Buckeye Union Ins. Co.*, 5th Dist. Richland No. 92-CA-6, 1992 Ohio App. LEXIS 6155, 1992 WL 362578 (Dec. 2, 1992); *Auto-Owners Ins. Co. v. JC KC, Inc.*, 9th Dist. Summit No. 18937, 1998 Ohio App. LEXIS 5268, 1998 WL 766695 (Nov. 4, 1998); *see also Williams v. Saga Enterprises, Inc.*, 225 Cal. App. 3d 142, 274 Cal. Rptr. 901 (Cal. App. 1990) (genuine issue of fact of whether employees allowing drunk patron to drive away breached duty to innocent motorist).

9. Because the Court finds that plaintiffs have met their burden of proof as to Counts One, Three, and Five of their first amended complaint, and will enter judgment in plaintiffs' favor.

10. As to damages, the Court finds that Brad and Jamie Young have both suffered substantial harm because of the crash.

11. The Court finds that Mr. Young has incurred reasonable medical expenses of $127,431.33 as a direct and proximate result of the events at issue. The Court also finds that Mr. Young has suffered lost wages of $19,322.24.

12. Mr. Young suffered, and continues to suffer, substantial pain and suffering, disfigurement, inconvenience, loss of enjoyment of life, and lost neurological and memory function because of his injuries. The Court finds that Mr. Young has suffered a permanent and substantial physical deformity, and permanent and substantial loss of a bodily organ system (Mr. Young's neurological system). The Court also finds that Mr. Young's injuries have had a devastating affect on his wife Jamie.

13. The Court awards damages as follows:

    a. To Brad Young:

        i. $146,753.57 in economic damages (reflecting medical expenses and lost wages); and

        ii. $1,000,000 in noneconomic damages.

    b. To Jamie Young for her loss of consortium claim: $500,000.

## FINAL JUDGMENT

Based on the foregoing, the Court GRANTS final judgment in favor of Brad Young and against 5411, Inc. for $1,146,753.57, and GRANTS final judgment in favor of Jamie Young for $500,000. Costs taxed to defendant.

(ECF No. 1-3).

Defendant did not appeal the State Court's final judgement. (Compl. at ¶ 30, ECF No. 1). Defendant alleges that neither Plaintiffs nor 5411 provided Defendant with notice of the State Court's issuance of its Findings of Fact, Conclusions of Law and Final Judgement. (Counterclaim at ¶¶ 38–39, ECF No. 7). Plaintiffs admit that they did not provide Defendant with notice but deny

for want of knowledge that 5411 failed to provide Defendant with such notice. (Pl. Answer at ¶¶ 25–26, ECF No. 8).

On September 4, 2019, Plaintiffs filed their Complaint in this Court. (ECF No. 1). Plaintiffs seek to recover from Defendant for the judgement against 5411, and for claims against Defendant that 5411 has assigned to Plaintiffs. (*Id.* at ¶ 3). The claims Plaintiffs raise in their Complaint include (1) enforcement of the final judgement under O.R.C. § 3929.06, (2) a declaratory judgement under O.R.C. § 2721.01 *et seq.* and O.R.C. § 2201 *et seq.*, (3) breach of contract, and (4) breach of fiduciary duty/bad faith. (*Id.* at PageID #7–10). On October 24, 2019, Defendant filed its Answer and Counterclaims for (1) breach of contract, and (2) declaratory relief. (ECF No. 7 at PageID #112–13). Plaintiffs filed their Answer on November 14, 2019.

On May 13, 2020, Defendant filed the presently at issue Motion for Judgement on the Pleadings pursuant to Fed. R. Civ. P. 12(c). (ECF No. 12). Defendant asks this Court to dismiss the Complaint in its entirety with prejudice, and to grant its Motion with respect to Court Two of its Counterclaims. (*Id.* at PageID #280). Defendant seeks a declaration that its coverage decision was correct, its coverage decision was reasonably justified, and that it had no duty to defend or indemnify 5411 or its assignees in connection with the underlying state court case and judgement. (*Id.*). The Motion is fully briefed.

## II.

The Federal Rules of Civil Procedure provide that, "after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standard of review for a Rule 12(c) motion for judgment on the pleadings is identical to the standard for a motion to dismiss under Rule 12(b)(6). *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008). To state a claim upon which relief may be granted, Plaintiffs must satisfy the pleading requirements set forth in Rule 8(a). While Rule 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief," in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677–78 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (clarifying the plausibility standard articulated in *Twombly*). Furthermore, "[a]lthough for purposes of a motion to dismiss [a court] must take all the factual allegations in the complaint as true, [it][is] not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 677–79 (quoting *Twombly,* 550 U.S. at 55) (internal quotations omitted). "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. at 678–79.

In *Twombly*, the Supreme Court concluded that, to meet the Rule 8 standard, a complaint must "nudge [] [a plaintiff's] claims across the line from conceivable to plausible." 550 U.S. at 570. The Court held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his

[entitlement] to relief [pursuant to Rule 8(a)(2)] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (internal citations and quotations omitted). "[N]aked assertion[s] . . . without some further factual enhancement [] stop[] short of the line between possibility and plausibility of entitle[ment] to relief." *Id.* at 557 (internal quotations omitted).

In *Iqbal*, the Court explained that one of the "principles" underlying *Twombly* is that the ordinary rule that courts must accept as true allegations made in pleadings for purposes of deciding a Rule 12(b)(6) motion does not apply to legal conclusions. *Id*. at 678. In other words, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679.

## III.

This case involves the applicability of an insurance policy. The Supreme Court of Ohio has held "that an insurance policy is a contract, and that the relationship between the insurer and the insured is purely contractual in nature." *Nationwide Mutual Ins. Co. v. Marsh,* 15 Ohio St 3d 107, 109, 472 N.E.2d 1061 (1984) (citing *Ohio Farmers Ins. Co. v. Cochran,* 104 Ohio St. 427, 135 N.E. 537 (1922)).[2]

### A. Duty to Defend

Under Ohio law, "[t]he duty of an insurer to defend an insured is a broad duty—broader than the duty to indemnify—that is absolute when the complaint contains any allegation that could arguably be covered by the insurance policy." *Granger v. Auto-Owners Ins.*, 144 Ohio St.3d 57, 2015-Ohio-3279, 40 N.E.3d 1110, ¶ 21 (Ohio 2015) (citing *City of Sharonville v. Am. Emplrs. Ins.*

---

[2] The parties to not appear to dispute that Ohio law controls the interpretation of the Policy. (*See, e.g.*, Motion at PageID #292, ECF No. 12; Pl. Resp. at PageID #335, ECF No. 16).

*Co.*, 109 Ohio St.3d 186, 2006-Ohio-2180, 846 N.E.2d 833, ⁋ 13 (Ohio 2006)). "An insured has an absolute duty to defend an action when the complaint contains an allegation in any one of its claims that could arguably be covered by the insurance policy, even in part and even if the allegations are groundless, false, or fraudulent." *City of Sharonville*, 2006-Ohio-2180 at ⁋ 13 (citing *Sanderson v. Ohio Edison Co.*, 69 Ohio St.3d 582, 635 N.E.2d 19 (Ohio 1994) (syllabus ⁋ 1)). "Once an insurer must defend one claim within a complaint, it must defend the insured on all the other claims within the complaint, even if they bear no relation to the insurance-policy coverage." *Id.* (citing *Preferred Mut. Ins. Co. v. Thompson*, 23 Ohio St.3d 78, 80, 491 N.E.2d 688 (Ohio 1986)).

"An exception to the absolute duty exists when all the claims are each clearly and indisputably outside the coverage." *Granger*, 2015-Ohio-3279 at ⁋ 21. That is to say, "the insurer need not provide a defense if there is no set of facts alleged in the complaint that, if proved true, would invoke coverage for any claim." *Id.* "The duty to defend an action is not determined by the action's ultimate outcome or the insurer's ultimate liability." *Cardiothoracic & Vascular Surgical Specialists, Inc. v. Travelers Indem. Co.*, 2006-Ohio-6947, ⁋ 21 (Ohio App. Ct. 2006).

### i.    Coverage of the "Insured"

Defendant first argues that it had no duty to defend 5411 in the state court case because Mr. Pennington was not an "insured" and respondeat superior liability did not apply. (ECF No. 12 at PageID #295–96). Plaintiff responds that their claims in state court were not against Mr. Pennington, but 5411 directly. (ECF No. 16 at PageID #336). Indeed, in the state court case Plaintiff did not raise claims against Mr. Pennington, and Plaintiff did not contend that 5411 was liable under a respondeat superior theory, but rather raised claims against 5411 that included negligent supervision and training. (ECF No. 7-3 at ⁋⁋ 23–27). Defendant does not dispute that

11

5411 is an "insured." (Counterclaim at ¶ 2, ECF No. 7). Accordingly, Defendant's first argument is unpersuasive.

### ii.      The Liquor Liability Exclusion

Defendant next argues that the Policy's Liquor Liability exclusion relieved Defendant of its duty to defend the insured in the underlying state court case. That exclusion states that the Policy does not cover:

> "Bodily injury" or "property damage" for which any insured may be held liable by reason of:
>
> (1) Causing or contributing to the intoxication of any person;
>
> (2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or
>
> (3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

(ECF No. 1-1 at PageID #40). The Court will begin with Count One of the State Court Amended Complaint, which alleged negligent supervision and training.

Defendant asserts that both parts one and two the Liquor Liability exclusion apply to Count One because the facts alleged within that Count "make clear that the consumption of alcohol was inextricably intertwined with, and caused the accident itself." (Motion at PageID #309, ECF No. 12). Defendant also asserts that part three of the exclusion applies because the Ohio Dram Shop Act provides the exclusive remedy, preempting all other claims and causes of action under these circumstances. (*Id.* at PageID #314).

Plaintiffs respond that the exclusion is not triggered by the consumption of alcohol alone, but by intoxication or the violation of liquor laws. (*See* ECF No. 16 at PageID 341). Plaintiff further responds that the State Court Amended Complaint pled multiple causes of action in the alternative, and that the factual allegations "did not depend on Mr. Pennington being intoxicated,

on 5411 furnishing him alcohol while under the influence, or on 5411 violating a liquor law or regulation [.]" (*Id.* at PageID #341–42).

Count One of the State Court Amended Complaint relevantly alleges, "[a]fter 2:30 a.m. on September 1, 2013, . . . Columbus Gold employees, including Mr. Pennington, consumed alcohol and performed their post-closing job duties for several hours after the bar closed." (ECF No. 7-3 at ¶¶ 7, 23). "Columbus Gold did not train Mr. Pennington or its other employees on safe practices involving consumption of alcohol and remaining at work for long hours after the bar closed." (*Id.* at ¶¶ 11, 23). "Columbus Gold's failure to train and supervise Mr. Pennington created an unreasonably dangerous situation, because an employee staying several hours after 2:30 AM to complete post-closing job duties while consuming alcohol is naturally going to be less capable of driving safely." (*Id.* at ¶¶ 12, 23). "Columbus Gold's failure to train and supervise Pennington was a proximate cause of the crash." (*Id.* at ¶¶ 20, 23). "Alternatively, Columbus Gold's serving alcohol to Mr. Pennington after hours was a proximate cause of the crash." (*Id.* at ¶¶ 21, 23). "By failing to train or supervise its employees, including Mr. Pennington, on safe work practices related to post-closing work activities, hours worked, and consumption of alcohol, Columbus Gold created an unreasonably dangerous risk that its employees would harm others." (*Id.* at ¶ 25). "Had defendant properly trained and supervised its employees, Columbus Gold would have closed shortly after 2:30 a.m., Mr. Pennington would have left the facility and Mr. Young never would have been hit by him the next morning." (*Id.* at ¶ 26).

The negligent supervision and training alleged in Count One of the State Court Amended Complaint is not "'indisputably outside the contracted policy coverage' and could arguably have been covered under the Policy, thereby triggering Mesa's duty to defend." *Mesa Underwriters Specialty Ins. Co. v. Secret's Gentleman's Club*, 2017 U.S. Dist. LEXIS 207535, *47 (N.D. Ohio

2018) (citing *Cincinnati Ins. Co. v. CPS Holdings, Inc.*, 115 Ohio St.3d 306, 307, 2007-Ohio-4917, 875 N.E.2d 31 (Ohio 2007).

Count One of the State Court Amended Complaint only alleges that Mr. Pennington consumed alcohol, without taking the next step of alleging that he was intoxicated or under the influence. The first part of the Liquor Liability exclusion requires the "intoxication" of the person, and the alternative second part requires the person to be "under the influence of alcohol[.]" (ECF No. 1-1 at PageID #40). Arguably, failing to supervise and train one's employees so that they did not consume alcohol and remain at the bar after closing could amount to negligence whether or not their consumption reached intoxication.

It is of no moment that Plaintiffs alleged in Count Three that "Pennington was visibly intoxicated[,]" (ECF No. 7-3 at ⁋ 35), because it is well settled that under Ohio law that litigants can plead claims in the alternative. *Iacono v. Anderson Concrete Corp.*, 42 Ohio St.2d 88, 92, 326 N.E.2d 267, 270 (Ohio 1975). "When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements." OH. ST. RCP Rule 8(E)(2).

For the same reason, Defendant's assertion that the Ohio Dram Shop Act precludes liability is unpersuasive. The Ohio Dram Shop Act is an "exclusive" remedy that "exclude[s] all other common law negligence claims against a liquor permit holder for the negligent acts of a person who became *intoxicated* by alcohol furnished by the permit holder." *Johnson v. Montgomery*, 2016-Ohio-1472, ⁋ 21, 63 N.E.3d 631, 639 (Ohio Ct. App. 2016) (emphasis added). Here, however, the Plaintiffs claimed through Count One of their State Court Amended Complaint that Mr. Pennington had consumed alcohol without further alleging that he had become intoxicated. The allegations of intoxication came later, through claims alleged in the alternative.

14

For these reasons, the Court concludes that Liquor Liability exclusion does not apply here to relieve Defendant of its duty to defend the insured.

### iii.    The Employment-Related Exclusion

Next, Defendant argues that it had no duty to defend 5411 in the state court case because the Policy's Employment-Related exclusion applies and relieved Defendant of its duty to defend. That exclusion states that the Policy does not cover:

"Bodily injury" to:

(1) A person arising out of any:

> (a) Refusal to employ that person;
>
> (b) Termination of that person's employment;
>
> (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity[.]

(ECF No. 1-1 at PageID #57). The parties dispute the breadth of this exclusion.

Defendant argues that this exclusion covers negligent supervision and training as employment-related practices, policies, or omissions. (*See* ECF No. 12 at PageID #297, 300). Defendant asserts that the exclusion applies here because Plaintiffs alleged Mr. Young's injury arose from the insured's omission (negligent supervision and training). (*Id.* at PageID #300).

Plaintiffs respond that this exclusion does not apply here because this exclusion only applies to claims for bodily injury by prospective, current, or former employees of the insured

arising out of the insured's employment-related acts, such as hiring and firing. (ECF No. 16 at PageID #338–39). In support of this interpretation, Plaintiffs point out that language of the exclusion is directed towards bodily injury to "a person" arising out of the employment-related practices directed at "that person[.]" (*Id.* at PageID #337). Plaintiff asserts that 5411 directed its negligent supervision and training of its employee, Mr. Pennington; not Mr. Young. (*Id.* at PageID #339).

Defendant replies by noting that the Policy language states that the exclusion applies whether the insured may be liable as an employer or "in any other capacity." (Reply at PageID #377, ECF No. 19) (emphasis omitted); (ECF No. 1-1 at PageID #57). Defendant asserts, therefore, that exclusion is not limited in its application to only employees of the insured. (ECF No.19 at PageID #379).

As mentioned above, it is long resolved that insurance policies are contracts, and that the basic laws of contracts apply. *See, e.g.*, *Nationwide Mutual Ins. Co. v. Marsh*, 15 Ohio St 3d 107, 109, 472 N.E.2d 1061 (1984); *Ohio Farmers Ins. Co. v. Cochran*, 104 Ohio St. 427, 135 N.E. 537 (1922). When interpreting an insurance policy to determine the extent of a policy's coverage, "[a] court must give undefined words used in an insurance contract their plain and ordinary meaning." *Twin Maples Veterinary Hospital Inc. v. Cincinnati Ins. Co.,* 159 Ohio App. 3d 590, 596, 824 N.E.2d 1027 (Ohio App. Ct. 2005) (citing *Nationwide Mutual Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St. 3d 107, 108, 652 N.E.2d 684 (1995)). When the "terms in an existing contract are clear and unambiguous, [the] court cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties." *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St 2d 241, 246, 374 N.E.2d 146 (1978). However, "[w]here provisions of a contract of insurance are reasonably susceptible [to] more than one interpretation, they will be construed

strictly against the insurer and liberally in favor of the insured." *Twin Maples,* 159 Ohio App. 3d at 596, 824 N.E.2d 1027 (citing *King v. Nationwide Ins. Co.*, 35 Ohio St. 3d 208, 519 N.E.2d 1380 (1988)). Particularly when the policy language at issue is an exclusion, the language "will be interpreted as applying only to that which is *clearly* intended to be excluded." *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.*, 64 Ohio St.3d 657, 665, 597 N.E.2d 1096, 1102 (Ohio 1992) (emphasis in original). *Accord*, *Granger*, 2015-Ohio-3279 at ⁋ 22.

Having reviewed the relevant Policy language, the Court does not find that the Employment-Related exclusion was clearly intended to exclude coverage here. The phrase "that person" is inherently malleable. Read within the context of "[e]mployment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person[,]" reasonable minds could conclude that "that person" means a prospective, current, former employee, or a person otherwise associated in an employment-related way—not an unassociated third party. (ECF No. 1-1 at PageID #57).

Defendant asserts that its interpretation is supported by case law, but the case law to which Defendant cites is distinguishable. In the cases Defendant cites in its Motion, the injured parties were all former employees of the insureds. *E.g.*, *Cardiothoracic & Vascular Surgical Specialists, Inc. v. Travelers Indem. Co.*, 2006-Ohio-6947, ⁋⁋ 5–8 (Ohio App. Ct. 2006) (describing the underlying lawsuit brought by McDonnell, who "signed an employment agreement with" the plaintiff insured and whose claims against the insured included wrongful discharge in violation of public policy). Defendant cites additional case law in its reply brief for the proposition that the Employment-Related exclusion extends beyond employees. (ECF No. 19 at PageID #380–81). However, in one way or another these unpublished decisions all still involved injured parties that

had an employment-related association with the insureds. For example, in *Hartford Inds. Co. of the Midwest v. Price Postel & Parma LLP*, 2012 WL 13012654, at *2 (C.D. Cal. 2012), the injured party was an attorney who became a partner at the insured firm, before being terminated and then raising claims that included defamation and employment discrimination. These cases are distinguishable because they did not involve an injury to an entirely unassociated third party, as is the case here.

Defendant alternatively asserts that even under Plaintiff's interpretation of this exclusion language, the exclusion still applies because the negligent supervision and training was "directed at" Mr. Young. (ECF No. 1-1 at PageID #57; ECF No. 19 at PageID #382). Defendant argues that 5411's negligent supervision and training was directed at Mr. Young because the negligent supervision and training claim required a showing that 5411 both breached its duty to Mr. Young, and proximately caused his injury. (*See* ECF No. 19 at PageID #382).

However, giving "directed" its ordinary meaning when used in connection with "at" and an object, "directed" means to "[a]im (something) in a particular direction or at a particular person[.]" *Direct*, *Oxford Dictionaries Pro* (2020) (verb, definition 2) (as used in a sentence, "his smile was directed at Laura"). Supervision and training are directed, or aimed, at the employee.

Plaintiff's allegation in the state court case that 5411 breached its duty and proximately caused Mr. Young's injuries through its negligent supervision and training does not conflict with Plaintiff's assertion here that the negligent supervision and training was directed not at Mr. Young but at Mr. Pennington. It is inherent in the structure of a claim for negligent supervision and training that the employer breaches his duty and proximately causes injury to the plaintiff through conduct directed at the employee. *See generally* 39 Ohio Jur. 3d *Employment Relations* § 313 (2020) (Negligent Hiring and Supervision).

Accordingly, the Court concludes that Employment-Related exclusion does not apply here to relieve Defendant of its duty to defend the insured.

## B. Duty to Indemnify

Defendant argues that the Employment-Related exclusion also relieves it of its duty to indemnify 5411. Defendant's argument against a duty to indemnify rests on the State Court's findings rather than on the amended complaint, but it is otherwise the same as its argument against a duty to defend. (*See* ECF No. 12 at PageID #302–304). These findings of fact, however, do not change the analysis. The State Court found that the insured breached its duty to Mr. Young by failing to ensure its employees conducted themselves in a safe manner and failing to adequately train and supervise its employees. (Final Judgement, Conclusions of Law at ⁋ 3, ECF No. 1-3). The State Court further found that "the breaches of duty by [the insured] were the direct and proximate cause of harm to Brad Young." (*Id.*). For the same reasons as stated in section (A)(iii), the Court concludes that the Employment-Related exclusion does not apply here to relieve Defendant of its duty to indemnify the insured.

## IV.

For the reasons set forth above, Defendant's Motion for Judgment on the Pleadings (ECF No. 12) is **DENIED**.

**IT IS SO ORDERED.**


2/19/2021                                  s/Edmund A. Sargus, Jr.
**DATE**                                    **EDMUND A. SARGUS, JR.**
                                            **UNITED STATES DISTRICT JUDGE**

19